IN THE
SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

YOUR GIRL FRIDAY, LLC,  )
1802 Swann Street, N.W. Apt. B  )
Washington, D.C. 20009  )
                      Plaintiff,  )
                      vs.  )
                                           Civil Action No. _____

MGF HOLDINGS, INC.,  )
319 W. 4th St., Suite 200  )
Cincinnati, OH 45202  )

and  )

JULIE COLLINSWORTH a/k/a JULIE  )
HAGENMAIER, JULIE COLLINSWORTH )
HAGENMAIER, JULIE HAGENMAIER  )
COLLINSWORTH,  )
217 Rainbow Ridge  )
Cincinnati, Ohio 45215  )
                      Defendants.  )

RECEIVED
Civil Clerk's Office
JAN 27 2006
Superior Court of the
District of Columbia
Washington, D.C.

## COMPLAINT

Plaintiff Your Girl Friday, LLC, by and through undersigned counsel, for their complaint against MGF Holdings, Inc. and Julie Collinsworth a/k/a Julie Hagenmaier, Julie Hagenmaier Collinsworth, and Julie Collinsworth Hagenmaier (collectively, "Defendants"), allege as follows:

### INTRODUCTORY STATEMENT

1. On July 5, 2005, Defendant MGF Holdings, Inc. ("MGF"), at the direction and in the sole discretion of Defendant Julie Collinsworth a/k/a Julie Hagenmaier, Julie Hagenmaier Collinsworth, and Julie Collinsworth Hagenmaier ("Collinsworth"), initiated a trademark infringement action against Plaintiff Your Girl Friday, LLC ("YGF" or "Plaintiff") in the United

1

States District Court for the District of Columbia, styled *MGF Holdings, Inc. v. Your Girl Friday, LLC*, Case No. 05-1338 (hereinafter, the "Federal Action").

2. The Federal Action was frivolous. As such, Plaintiff asserted several counterclaims against Defendant MGF seeking declaratory relief, compensatory damages, and punitive damages. Rather than prosecute its claims and defend against Plaintiff's counterclaims, Defendant MGF, at the sole discretion of Defendant Collinsworth, agreed to settle the Federal Action for $50,000.00 before Defendant MGF replied to Plaintiff's counterclaims and before the parties engaged in any discovery.

3. The parties memorialized the principal terms of their settlement in a letter agreement ("Agreement") that was "binding" and "enforceable." A true and correct copy of the Agreement is attached hereto as Exhibit 1. Defendant Collinsworth reviewed and approved the Agreement in her sole and absolute discretion, and directed MGF's counsel to execute the Agreement.

4. Defendants never had the money to pay the $50,000.00 settlement and never intended to do so. At all times relevant herein, Defendants concealed the financial condition of Defendant MGF. Almost two months after the parties entered into the Agreement, Defendants claimed that they were insolvent and "judgment proof" and repudiated the Agreement. Now, Defendant Collinsworth is abusing the corporate form and mocking Plaintiff, stating that Plaintiff cannot recover from MGF because it is insolvent and further stating that Plaintiff cannot recover from her personally because she cannot be held liable for breach of the Agreement.

5. Plaintiff has dismissed without prejudice its counterclaims in the Federal Action. Plaintiff files this Complaint against Defendants in this forum to remedy the wrong that has been perpetrated against it. Defendants cannot be allowed to file a frivolous lawsuit, agree to settle the lawsuit, and then refuse to pay the agreed-to settlement amount without any consequence. During

all times relevant herein, Plaintiff has incurred substantial attorneys' fees, costs, and expenses in defending itself against Defendants' wrongful conduct.

6. Nor can Defendant Collinsworth be permitted to abuse the corporate form and hide behind Defendant MGF, when MGF was nothing more than a company on paper with virtually no business and no bona fide assets. Defendant Collinsworth should be held liable for breach of the Agreement because she, in her sole and absolute discretion, directed that MGF enter into the Agreement and later directed that the $50,000.00 settlement amount not be paid. Defendant Collinsworth cannot use the corporate veil to insulate herself from the wrongs that she has committed, and has directed her agents and representatives to commit, against Plaintiff.

## PARTIES

7. Plaintiff is a limited liability company established under the laws of the District of Columbia, with its principal business address at 1802 Swann Street, N.W., Apt. B, Washington, D.C. 20009.

8. Defendant MGF is a corporation established under the laws of the State of Ohio, with its principal place of business at 319 W. 4th St., Suite 200, Cincinnati, OH 45202.

9. Defendant Collinsworth is a resident of the State of Ohio, with her address at 217 Rainbow Ridge, Cincinnati, Ohio 45215. At all times relevant herein, Defendant Collinsworth was the alter ego of Defendant MGF, as alleged more fully in this Complaint.

## JURISDICTION AND VENUE

10. The jurisdiction of this court is found upon D.C. Code § 11-921.

11. Personal jurisdiction over Defendants is proper because Defendants have purposefully directed their activities at the District of Columbia and those activities have caused substantial injury within the District, as alleged more fully in this Complaint.

12. In addition, Defendants have alleged in prior litigation and have made representations to Plaintiff that they, either directly or through their agents, have transacted substantial business in the District of Columbia and/or contracted to supply services within the District of Columbia since at least 2003.

13. Defendant Collinsworth, through a company that she controls, operates a website, www.egirlfriday.com, that solicits business and offers services within the District of Columbia. When a user types in a District of Columbia zip code, the following message appears: "GREAT NEWS! My Girl Friday Services are available for the zip code [number]. This zip code will be serviced by our Washington, DC Concierge Service location."

14. Finally, this action arises out of a breach of a settlement agreement that was negotiated, executed, and due to be performed within the District of Columbia.

## FACTS COMMON TO ALL COUNTS

15. Plaintiff incorporates paragraphs 1-14 of this Complaint as if fully set forth herein.

16. YGF was founded in 2004 by a long-time resident of the District of Columbia. YGF uses the business name "YOUR GIRL FRIDAY," and it provides a wide variety of services to individuals, including organizing their homes or offices; running errands for them, or otherwise completing daily chores that busy professionals have no time to complete. YGF's business is small and is confined to the District, Virginia, and Maryland. YGF does not have a website and only has run a small advertisement in the *Current* once a month since May 2004.

17. Defendant Collinsworth is the president of MGF and was the only person authorized to approve transactions on behalf of Defendant MGF. At all times relevant herein, Defendant Collinsworth: controlled the day-to-day operations of MGF; has been aware of MGF's financial condition; has used her own money, or the money of companies she controls, to fund MGF's operations and pay its expenses; and has, in her sole discretion, and at all relevant times

4

herein, directed every action of Defendant MGF. Defendant MGF's predecessor-in-interest, MGF Holdings, Ltd., maintained a $25,000.00 revolving line of credit with Fifth Third Bank (#0905161592-00026), and Defendant Collinsworth personally guaranteed that line of credit.

18.   Defendant Collinsworth also is the principal of other companies related to MGF, including MGF Holdings, Ltd. (predecessor-in-interest to MGF), My Girl Friday, Inc., MGF Merger Company, and My Neighbor. MGF and these other entities all share the same office space, and Defendant Collinsworth controls the day-to-day operations of, and provides the operational funds for, these entities as well.

19.   Defendant Collinsworth is the sole shareholder in My Girl Friday, Inc., an entity that made substantial cash infusions into Defendant MGF to keep MGF operational. The timing and amount of those cash infusions were decisions made by Defendant Collinsworth in her sole discretion. Defendant Collinsworth had sole control over the movement of funds into and out of Defendant MGF. Defendant Collinsworth also paid Defendant MGF's liabilities from her own funds, from those of Andrew Hagenmaier, or from the accounts of her other companies, including, but not limited to, My Girl Friday, Inc. Defendant Collinsworth also used Defendant MGF to further other business ventures, including, but not limited to, My Girl Friday, Inc. and an entity named My Neighbor Next Door, Making Travel Easier.

20.   Defendant MGF was formed in February or March 2005, and succeeded to MGF Holdings, Ltd., which was merged with another one of Defendant Collinsworth's companies, MGF Merger Company. During all times relevant herein, Defendant MGF was a company that existed essentially on paper, and paper alone. For example, Defendant MGF: failed to observe bona fide corporate formalities; was a cash business that did not regularly maintain financial statements or general ledgers; did not regularly maintain minutes of any board meetings or document contractual relationships; did not have internal controls in place or a bona fide accounting system; did not

establish policies and procedures that provide reasonable assurance of reliable accounting estimates; did not have formal job descriptions or other ways of defining particular job tasks; did not assign any person the responsibility of reviewing operating results or budget variations; and, did not assign any person the responsibility of designing and approving a financial reporting system or procedures for safeguarding assets.

21. When Defendant MGF attempted to enter the franchising business in the late summer of 2004, Defendant Collinsworth filled out a Franchise Registration Questionnaire. In it, she stated: "[MGF] is privately owned and funded by Julie C. Hagenmaier."

22. In April 2005, Plaintiff's business was threatened by Defendants, who, without any basis in fact, claimed that they had nationwide rights to the name "MY GIRL FRIDAY," that the name "MY GIRL FRIDAY" was "trademarked," that it was doing substantial business in the District of Columbia beginning in January 2003 (before YGF), and that, to avoid legal action, YGF should purchase a franchise from MGF.

23. Defendant Collinsworth, and her agents and representatives, made false representations about "MY GIRL FRIDAY" to Plaintiff. In an April 12, 2005 letter to YGF signed by "Julie Collinsworth Hagenmaier" as "Founder and CEO" of My Girl Friday, Inc., Defendant Collinsworth stated that My Girl Friday, Inc.—and not MGF—owned the proprietary rights to "MY GIRL FRIDAY" and that the name "MY GIRL FRIDAY" was "trademarked."

24. These representations were false and Defendant Collinsworth knew that they were false when she made them. Specifically: in correspondence with Plaintiff between April and June 2005, MGF's counsel stated that MGF Holdings, Ltd. and My Girl Friday, Inc.—and not MGF—owned the proprietary rights to "MY GIRL FRIDAY"; in a draft complaint submitted to counsel for McRill Services LLC d/b/a MY GAL FRIDAY, MGF's counsel alleged that "Plaintiff MGF Holdings, Ltd. is the owner of the service mark 'MY GIRL FRIDAY'"; and, MGF Holdings, Ltd.

6

filed with the U.S. Patent and Trademark Office the trademark application for "MY GIRL FRIDAY," and MGF Holdings, Ltd. remains the applicant as of the date of this filing.

25.    Nor, at any time relevant herein, was "MY GIRL FRIDAY" "trademarked," as represented by Defendant Collinsworth. Instead, and to this date, MGF Holdings, Ltd.'s trademark application seeking federal trademark status for "MY GIRL FRIDAY" remains pending.

26.    The true facts, however, did not deter Defendants from making false allegations of fact to YGF and to the United States District Court for the District of Columbia ("DDC"). On July 5, 2005, at the direction of Defendant Collinsworth, MGF filed the Federal Action against YGF in the DDC.

27.    In the Federal Action, and at the direction of Defendant Collinsworth, Defendant MGF alleged that it—and not MGF Holdings, Ltd. or My Girl Friday, Inc.—had proprietary rights in the name "MY GIRL FRIDAY" and that YGF allegedly infringed those rights. At the direction of Defendant Collinsworth, Defendant MGF alleged, among other things, that MGF was doing business in "64 . . . markets" and was an "extremely successful business" that had "extensive[ly] promot[ed]" itself. Compl., ¶¶ 9, 10, 11. At the direction of Defendant Collinsworth, Defendant MGF further alleged that it had "expanded" into "the Washington, D.C. metropolitan area." Id., ¶ 9. Defendant Collinsworth reviewed, approved, and authorized Defendant MGF to make these allegations.

28.    Statements made to the press and in promotional material provided to YGF by Defendant Collinsworth similarly painted the "MY GIRL FRIDAY" business as booming. In a December 6, 2002 article in the *Cincinnati Business Courier*, Defendant Collinsworth stated that she "ha[s] deals that are worth $10 million, $20 million and $40 million on the table." In promotional material provided to YGF, Defendant Collinsworth stated that "the *My Girl Friday* brand is quickly

7

becoming the leader in this emerging [national concierge service] industry" and that "*My Girl Friday* is at the leading edge of a major growth industry."

29. On August 3, 2005, MGF's counsel in the Federal Action wrote to YGF and offered YGF "an opportunity to become a franchisee on favorable terms." The letter continued that, "as the litigation continues," MGF may change its mind. "I would strongly encourage you to consider this option," MGF's counsel said, because "becoming part of [MGF's] growing network of franchisee's [sic] offers considerable benefits." (Emphasis added.) Defendant Collinsworth reviewed, approved, and authorized the false representations made in the August 3 letter.

30. The allegations in the Federal Action and the statements to the press, in the promotional material, and in the August 3 letter were false when made and Defendants knew it. Based on audited financial statements of MGF Holdings, Ltd. (MGF's predecessor-in-interest) dated July 5, 2005—the same date that MGF filed the Federal Action against Plaintiff at the direction of Defendant Collinsworth—MGF Holdings, Ltd. had: a mere $5,011 in cash; a net operating loss of $14,197; $0 in accounts receivables; $0 in sales; spent a paltry $2,710 in advertising for the six-month period June 15, 2004 to December 31, 2004; and, a whopping $275,225 in accounts payables.

31. The back-up worksheets that accompanied a 2005 audit stated: "No revenue for this company @ 12/31/04." The worksheets to the 2005 audit also stated: "We discussed the fraud risk factors involved in this engagement and determined the only concern would be an overstatement of assets. Since the company has a limited number of transactions from 6/15/04 (last audit report) and 12/31/04, we will examine all transactions." In another worksheet, under the heading "Potential Fraud Risks," Defendants' accountant wrote: "overstatement of assets."

32. These audits were not conducted in the ordinary course of business. Instead, they were used to support Defendants' submission of a Uniform Franchise Offering Circular. After that

8

submission was made in the late summer of 2004, no further audit reports were generated by or on behalf of Defendant MGF.

33. Thus, contrary to the representations made in Defendants' August 3 letter, there was no "growing network of franchisee[s]" at all. MGF Holdings, Ltd.'s books showed that, as of December 31, 2004, not even a single franchisee had been sold because MGF Holdings, Ltd. had $0 in sales. In fact, MGF Holdings, Ltd. has sold only one franchise, and that franchise appears to have failed as well.

34. Without any knowledge of MGF's true financial condition, Plaintiff defended itself vigorously in the Federal Action. Plaintiff answered MGF's frivolous complaint and asserted several counterclaims against MGF based on information available in the public domain. Pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure, Plaintiff dismissed its counterclaims in the Federal Action without prejudice on January 26, 2006.

35. Defendants used alleged "good faith" settlement negotiations to avoid several deadlines imposed in the Federal Action and by the Federal Rules of Civil Procedure and to conceal the fact that its business had failed. Plaintiff agreed to forego the prosecution of its counterclaims in order to facilitate settlement.

36. That settlement was reached on August 29, 2005, and the "princip[a]l terms" of that settlement were memorialized in a September 9, 2005 Letter Agreement (the "Agreement"). *See* Exh. 1. Plaintiff agreed to refrain from engaging in discovery and prosecuting its counterclaims in consideration for Defendants' agreement to pay Plaintiff $50,000.00. Counsel for Plaintiff and MGF executed the Agreement on behalf of their respective clients. Defendant Collinsworth reviewed the terms of the Agreement, approved them, and, in her sole discretion, directed MGF's counsel to enter into the Agreement. Defendant Collinsworth, and she alone, caused Defendant

9

MGF to incur this liability by authorizing and approving the filing of a frivolous lawsuit and then agreeing to settle the Federal Action for $50,000.00.

37. In the Agreement, Defendants agreed, among other things, to pay YGF $50,000.00. On its face, the Agreement states that the parties "<u>intended</u>" the Agreement to be "<u>binding</u>" and "<u>enforceable</u>." Agreement, Preamble & ¶ 10 (emphasis added). The purpose of the Agreement was to ensure that all parties were bound to the settlement and that no party could walk away from that settlement without being in breach of the Agreement. Defendants, at all relevant times, knew that this was the purpose of the Agreement. Thus, the Agreement (paragraph 8) contained an attorneys' fees provision which stated: "If a Party seeks judicial enforcement of this letter agreement, then the prevailing party shall be entitled to reasonable attorneys' fees, costs, and expenses arising out of or related to the enforcement action." Exh. 1, ¶ 8.

38. To save Defendants the expense of travel to Washington, D.C. and of attorneys' fees in connection with a scheduling conference set by the Court in the Federal Action, Plaintiff agreed to adjourn the conference and informed the Court in the Federal Action that "the parties reached a settlement in principle of this entire dispute."

39. Plaintiff consented to the motion to adjourn in the Federal Action only because Defendants agreed to enter into the Agreement, which memorialized the material terms of the settlement.

40. Based on Defendants' representations, the Court in the Federal Action issued an Order on August 30, 2005 dismissing the case without prejudice and allowing the parties 45 days to consummate the settlement. The 45-day period was set to expire on Friday, October 14, 2005. Unbeknownst to Plaintiff, Defendants never intended to, and ultimately did not, comply with the Federal Court's Order or with the Agreement to settle the Federal Action.

41. At no time between August 29, 2005 and October 24, 2005 did Defendants or their counsel of record in the Federal Action state, or even suggest, that Defendant MGF was unable to pay the agreed-to settlement of $50,000.00. To the contrary, Plaintiff was repeatedly told by Defendants' counsel in the Federal Action that MGF had a solid business that was doing well. MGF's counsel made these representations to Plaintiff at the direction of Defendant Collinsworth.

42. On October 25, 2005—almost *two months* after the parties informed the court in the Federal Action that a settlement had been reached and *46 days* after Defendants entered into the Agreement—Defendants repudiated the Agreement. They informed Plaintiff for the first time that they could not pay any portion of the $50,000.00 settlement amount. Instead, Defendants offered Plaintiff $1,000.00.

43. Defendants have never disputed that the Agreement is "binding" and "enforceable," as the plain terms of the Agreement state. In fact, Defendants have repeatedly conceded—both to Plaintiff and to the court in the Federal Action—that they are in breach of the Agreement.

44. Having breached the Agreement, Defendants proposed various solutions to their dilemma, and they all required that Plaintiff enter into some undefined business relationship through which Defendants purportedly would pay Plaintiff over a period of years. All of these proposals were bogus and designed to disguise the true fact that Defendants never intended to comply with the terms of the Agreement and that Defendant MGF was insolvent.

45. Plaintiff rejected all of these absurd proposals for the obvious reason that a business venture with a failed business is no remedy for Defendants' breach of the Agreement and their knowing and intentional deceit in leading Plaintiff to believe that Defendants would honor their obligations under the Agreement. On November 4, November 10, and December 7, Plaintiff inquired as to Defendants' efforts to come up with the funds necessary to comply the Agreement.

11

Defendants did not respond to the first two inquires at all. When Defendants finally responded to Plaintiff's December 7 inquiry, it was plain that they had made no such efforts.

46. At all times relevant herein, Defendants, through their agents and representatives, intentionally disguised the true facts as to the financial condition of MGF by representing in the Federal Action that it intended to settle this matter and by representing to Plaintiff that they had the resources to pay the $50,000.00 settlement. These representations were false and Defendants knew that they were false when they made them. Defendant MGF never had the funds to comply with the terms of the Agreement and never intended to do so. As the president of MGF, Defendant Collinsworth was fully aware that MGF was insolvent, and she intentionally concealed that fact from the court in the Federal Action and from Plaintiff. Defendant Collinsworth, and she alone, decided not to pay Plaintiff the $50,000.00 settlement to which Plaintiff is entitled.

47. Defendant Collinsworth is now abusing the corporate form to avoid fulfilling her obligations under the Agreement. Defendant Collinsworth, personally and through her counsel, has mocked Plaintiff and stated that Plaintiff will never be able to recover the $50,000.00 settlement because MGF allegedly was insolvent, because Defendant Collinsworth could not be held personally liable for breach of the Agreement, and because Defendant Collinsworth allegedly is "judgment proof." Although Defendant Collinsworth has repeatedly stated that Defendant MGF is insolvent, she continues to operate her website at www.egirlfriday.com, to offer services within the District of Columbia, and to offer franchises for sale.

48. In the end, Defendant Collinsworth has orchestrated a charade for the past several months, in which she passed herself off as a successful businessperson and falsely characterized her company Defendant MGF as a legitimate, "extremely successful" enterprise. The truth, however, is that Defendant Collinsworth was unsuccessful and her company, Defendant MGF, was (and always has been) an empty shell that never had income or any bona fide assets.

12

03/23/2006  05:15   7933125   LAZYGOURMET   PAGE  07

49. Defendant Collinsworth's actions were harmful, unfair, unjust, inequitable, and wrongful. Plaintiff has suffered significant damage as a result of Defendants' wrongful conduct in the form of attorneys' fees, costs, expenses, lost profits, and other damages.

## CLAIMS FOR RELIEF

### COUNT ONE
(Breach of Contract)

50. Plaintiff incorporates paragraphs 1-49 of this Complaint as if fully set forth herein.

51. Defendant MGF entered into a "binding" and "enforceable" settlement that required it to pay YGF $50,000.00.

52. Defendant Collinsworth, in her sole discretion, reviewed and approved the terms of the Agreement.

53. At all relevant times herein, Defendant Collinsworth was the alter ego of Defendant MGF because: MGF was grossly undercapitalized and failed to observe even minimal corporate formalities; MGF was, by Defendant Collinsworth's own admission, insolvent at the time that the Agreement was signed; Defendant Collinsworth held herself out to the public and to her lenders as personally liable for the debts of Defendant MGF; Defendant Collinsworth diverted MGF's resources for her own personal use, including, but not limited to, funding her other business ventures; MGF lacked any bona fide corporate records; and, Defendant MGF was a mere façade used for the benefit of Defendant Collinsworth and to the detriment of Plaintiff.

54. Defendant Collinsworth in her sole discretion directed that the $50,000.00 settlement payment due and owing to Plaintiff not be made. Defendant Collinsworth had sole control over the movement of funds into and out of Defendant MGF.

55. Defendant Collinsworth has abused the corporate form by shielding herself from liability for breach of the Agreement.

56. As the alter ego of Defendant MGF, Defendant Collinsworth is responsible for the debts of Defendant MGF and is therefore liable for breach of the Agreement.

57. Pursuant to Paragraph 8 of the Agreement, Plaintiff is entitled to "reasonable attorneys' fees, costs, and expenses arising out of or related to" an action to enforce the Agreement. To date, Plaintiff has incurred reasonable attorneys' fess, costs, and expenses to enforce its rights under the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that, upon final judgment, it has judgment in the amount of $50,000.00, plus: reasonable attorneys' fees, costs, and expenses; pre- and post-judgment interest; and, any other and further relief, both at law and in equity, to which Plaintiff may show itself justly entitled.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

DATED:   January 27, 2006
         Washington, D.C.

Respectfully submitted,

_____
Ugo Colella (DC Bar No. 473348)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: (202) 457-5693
Fax:   (202) 457-6315

*Attorney for Plaintiff*
*Your Girl Friday, LLC*

Exhibit 1

**PATTON BOGGS LLP**
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

September 9, 2005

Ugo Colella
(202) 457-5693
ucolella@pattonboggs.com



Richard S. Schurin, Esq.
Gottlieb, Rackman & Reisman, P.C.
270 Madison Avenue
New York, New York 10018-0601

Re: <u>MGF Holdings, Inc. v. Your Girl Friday, LLC</u>, No. 05-1338 (D.D.C.):
Letter Agreement Memorializing Settlement

This letter confirms that the parties, i.e., Plaintiff-Counterdefendant MGF Holdings, Inc. ("MGF") and Defendant-Counterplaintiff Your Girl Friday, LLC ("YGF"), collectively the "Parties," have reached a settlement, and this letter is intended to constitute an interim enforceable agreement. The principle terms of that agreement are as follows:

(1) MGF shall pay YGF a total of $50,000.00 (the "Settlement Amount").

(2) MGF shall pay the Settlement Amount in two installments: (a) MGF shall pay YGF $25,000.00 three business days after the Parties have executed a formal settlement agreement; and, (b) MGF shall thereafter pay YGF the remaining $25,000.00 in installments over a six-month period (exact number and schedule to be determined) ("Second Settlement Payment").

(3) The formal settlement agreement shall contain an acceleration clause that, *inter alia*, permits YGF to accelerate the balance of the Second Settlement Payment in the event MGF defaults on its payment obligations.

(4) YGF agrees to discontinue all use of the mark YOUR GIRL FRIDAY and not to use any other mark confusingly similar to MY GIRL FRIDAY. Notwithstanding the above, YGF shall be permitted to continue to use the mark "YOUR GIRL FRIDAY" until MGF has paid YGF the Settlement Amount, subject to YGF's agreement not to engage in any new advertising, except YGF may keep its commitment to the *Current* to continue to run a small ad.

(5) Subject to MGF's approval, and prior to the execution of a formal settlement agreement, YGF shall select an alternative name for conducting its business. MGF shall not unreasonably withhold approval of any alternative name that does

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

~~DRAFT~~ UC
~~August 31, 2005~~ /25

    not use the words "GIRL" or "FRIDAY" or is not otherwise confusingly similar to MY GIRL FRIDAY.

(6) YGF and its successor agree not to oppose MGF's pending trademark application in the U.S. Patent and Trademark Office, or otherwise cooperate with others who may choose to challenge MGF's trademark application or trademark rights.

(7) In the event the above-captioned matter is placed back onto the Court's docket, neither party shall object to the addition of any causes of action arising out of or related to this letter agreement.

(8) If a Party seeks judicial enforcement of this letter agreement, then the prevailing party shall be entitled to reasonable attorneys' fees, costs, and expenses arising out of or related to the enforcement action.

(9) This agreement and the future final agreement shall be deemed confidential. Neither party may disclose any terms of this settlement absent a Court Order compelling them to do so. However, the parties may disclose the terms of this settlement to accountants, lawyers and other business professionals on a need-to-know basis, and if asked by others, may only indicate that the dispute was settled to the satisfaction of all parties.

(10) This letter agreement shall be binding upon the Parties and their predecessors, successors, and assigns.

AGREED TO AND ACCEPTED BY:

_/s/ Ugo Colella_            _/s/ Richard S. Schurin_
Ugo Colella                Richard S. Schurin
Patton Boggs LLP            Gottlieb, Rackman & Reisman,
2550 M Street, N.W.           P.C.
Washington, D.C. 20037         270 Madison Avenue
                       New York, New York 10018-0601

_Attorney for Defendant-Counterplaintiff_    _Attorney for Plaintiff-Counterdefendant_
_Your Girl Friday, LLC_          _MGF Holdings, Inc._

**United States District Court**
**District of Columbia**

| | |
|---|---|
| YOUR GIRL FRIDAY, LLC )<br>1802 Swann Street, N.W. Apt. B )<br>Washington, D.C. 20009 )<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MGF HOLDINGS, INC., )<br>319 W. 4th St., Suite 200 )<br>Cincinnati, OH 45202 )<br>)<br>And )<br>)<br>JULIE COLLINSWORTH a/k/a JULIE )<br>HAGENMAIER, JULIE COLLINSWORTH )<br>HAGENMAIER, JULIE HAGENMAIER )<br>COLLINSWORTH, )<br>217 Rainbow Ridge )<br>Cincinnati, OH 45215 )<br>)<br>Defendants. ) | Case No. 06-0385<br><br>Judge Susan Ellen Huvelle |

## CERTIFICATE OF SERVICE

I, Ms. Julie Collinsworth, *pro se* Defendant in the above-captioned action, certify that on April 6, 2006, the foregoing Reply to Show Cause for Removal was served by first class mail upon the following person(s):

Ugo Collella, Esq.
Patton Boggs LLP
2550 M Street, NW
Washington, DC 20037

I, Ms. Julie Collinsworth, *pro se* Defendant in the above-captioned action, certify that on April 6, 2006, the foregoing Reply to Show Cause for Removal was served by hand-delivery to the following person(s):

Ms. Julie Collinsworth
President and CEO
MGF Holdings, Inc.
9525 Kenwood Road, Ste 16-355
Cincinnati, Ohio 45242

I, Ms. Julie Collinsworth, *pro se* Defendant in the above-captioned action, certify that on April 6, 2006, the foregoing Reply to Show Cause for Removal was served by hand-delivery to the following person(s):

Ms. Julie Collinsworth (individually)
9525 Kenwood Road, Ste 16-355
Cincinnati, Ohio  45242


I, Ms. Julie Collinsworth, *pro se* Defendant in the above-captioned action, certify that on April 6, 2006, the foregoing Reply to Show Cause for Removal was transmitted via Federal Express to be filed with the following Clerk of Court(s):

Clerk of Court
United States District Court for the District of Columbia
E. Barrett Prettyman US Courthouse
333 Constitution Avenue, NW
Washington, D.C.  20001.

                    Respectfully submitted,

                    *[signature: Julie Collinsworth]*
                    Ms. Julie Collinsworth
                    *Pro Se* Defendant
                    9525 Kenwood Road, Ste 16-355
                    Cincinnati, OH 45242
                    513.368.7978
                    Julie@egirlfriday.com